LOPEZ, Appellant,

v.

DORKOFF, Appellee.

[Cite as *Lopez v. Dorkoff,* 170 Ohio App.3d 241, 2007-Ohio-642.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2006–CA–146.

Decided Feb. 12, 2007.

G. Ian Crawford, for appellant.

Roger H. Williams, for appellee.

GWIN, Presiding Judge.

{¶ 1} Appellant, Katina Lopez, appeals a judgment of the Court of Common Pleas of Stark County, Ohio, which overruled her motion for prejudgment interest on a jury verdict rendered in her favor. Appellant assigns a single error to the trial court:

{¶ 2} "I. The trial court erred by finding appellee had acted in good faith in settlement negotiations and by failing to award appellant prejudgment interest."

{¶ 3} The record indicates that appellant sued defendant-appellee, Kathy Dorkoff, for personal injuries as a result of an automobile collision on February 7, 2003. Appellant alleged that appellee pulled out from a stop sign into the path of her vehicle, causing her to suffer a sprained left wrist with bilateral wrist pain, cervical, thoracic, and lumbar strain/sprain, headaches and temporomandibular joint disorder, multiple contusions, and depression.

{¶ 4} State Farm Insurance Company insured appellee with automobile liability insurance at limits of $100,000 per person and $300,000 per incident. The parties negotiated but could not reach a settlement. Appellant presented medical bills totaling approximately $21,000, plus lost wages. Appellant's initial demand was for the $100,000 limit, but she reduced her demand to $75,000 and finally to $50,000. Appellee offered $15,000. Less than two weeks before trial, appellee increased her offer. Appellant's notes suggested the offer was for $20,000, but appellee maintained that she offered $25,000. Appellant agreed to use the $25,000 figure in computing prejudgment interest.

{¶ 5} Trial commenced on January 17, 2006. Prior to this time, appellee indicated that there were issues of comparative negligence, but on the morning of trial, appellee stipulated to liability, and the matter was tried as to damages only. The jury returned a verdict in favor of appellant in the aggregate amount of $55,100. After a hearing, the court overruled the motion for prejudgment interest.

{¶ 6} R.C. 1343.03(C)(1) provides:

{¶ 7} "If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed."

{¶ 8} In *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, the Supreme Court held that a plaintiff seeking prejudgment interest must show that (1) liability was not reasonably in dispute, (2) the plaintiff made good-faith attempts to settle the case, and (3) the defendant did not make good-faith efforts to resolve the case prior to trial. The trial court found here that the only issue was whether appellee made good-faith efforts to settle the case prior to trial.

{¶ 9} Our standard of reviewing the trial court's decision is abuse of discretion. See *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 695 N.E.2d 1140. The Supreme Court has frequently held that an abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable, see, e.g., *State ex rel. Worrell v. Ohio Police & Fire Pension Fund,* 112 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380.

{¶ 10} At the hearing on the motion for prejudgment interest, the court heard evidence from State Farm's claims adjuster, Thomas Phillabaum, who was assigned to evaluate the matter. Phillabaum testified that once State Farm receives medical information, it sets a reserve amount that reflects the potential liability on the claim. The reserve amount in this matter was $50,000.

{¶ 11} Phillabaum testified that based on the severe damage to the vehicles, he believed that appellant was speeding before the crash. State Farm hired a company called IntroTech to reconstruct the accident. State Farm paid Intro-Tech approximately $4,600 for evaluating the crash. IntroTech reported that its estimate was preliminary in nature because it did not have sufficient information, such as the police crash-scene photos and deposition transcripts. The report concluded that appellant had exceeded the posted speed limit of 40 m.p.h. by 6 m.p.h. Because State Farm stipulated to liability at trial, it did not use the IntroTech report.

{¶ 12} In his earlier deposition, Phillabaum could not say whether State Farm had attempted to interview Jeffrey Hopes, another driver who witnessed the accident. Hopes gave a statement to the Perry Township Police Department indicating that appellant's vehicle was traveling at the posted speed limit. He also indicated that appellant was 40 or 50 feet, at best, from the intersection when appellee pulled out.

{¶ 13} Appellee indicated that she never saw appellant's vehicle prior to the crash. She never gave an estimate of appellant's speed.

{¶ 14} Phillabaum testified that in evaluating the nature and extent of appellant's injuries, he reviewed the medical records that appellant submitted to State Farm. Phillabaum testified that he reviewed a summary of the deposition of Dr. Paul Scheatzle, a physical medicine and rehabilitation doctor who treated appellant after the accident, although at the hearing Phillabaum could not recall exactly what the summary said. State Farm did not hire an expert of any kind to review the medical records, nor did it ask appellant to submit to an examination by its doctors. Phillabaum testified that his review of the records indicated that appellant had preexisting conditions of migraine headaches and depression, and for this reason, he disregarded all the medical bills attributable to treatment for these conditions. Phillabaum disregarded all but $6,000 of the approximately $21,000 bills for medical treatment. He conceded he understood that appellant

admitted the preexisting conditions and was alleging that the accident had aggravated them. On direct, appellant asked if Phillabaum believed a crash could aggravate preexisting conditions, but the court sustained his objection on the grounds that it called for a medical opinion he was unqualified to make.

{¶ 15} Phillabaum testified that he had attended appellant's deposition wherein she testified about her lost wages. In addition to employment with G.E. Capital, she operated a business called Cheer 11. At Cheer 11, she taught cheerleading routines to various groups of children and young women. Prior to the accident, she demonstrated dance routines and spotted the participants in various jumps and other maneuvers. It required significant physical labor.

{¶ 16} Phillabaum discounted appellant's claims for her injuries and for lost income because she testified that she continued to work at Cheer 11, and her business records indicated that Cheer 11 actually generated more income after the accident than prior to it. Phillabaum did not recall appellant testifying that although she kept Cheer 11 operating, she was unable to perform the physically demanding portions of the job, and she relied on other persons to assist her. Phillabaum conceded that the tax records he reviewed showed that appellant's income from G.E. Capital had decreased, although he could not recall the amounts. He disregarded the lost wages from G.E. Capital because he believed that if she could continue at Cheer 11, she should have been able to work at her desk job with G.E. Capital.

{¶ 17} Phillabaum testified that he reviewed no literature regarding the value of appellant's claims or any reports of jury verdicts for similar cases. Based upon his evaluation of appellant's claim, State Farm made no settlement offer even equaling her claimed medical expenses until the week before trial.

{¶ 18} In *Samonides v. Goodrich* (Dec. 21, 2001), Lucas App. No. L–00–1311, 2001 WL 1636438, the Court of Appeals for the Sixth District reviewed a similar situation and found that in spite of being able to articulate "some sort of evaluative process," nevertheless the insurance company had not rationally evaluated the risks of potential liability. The Lucas County Court of Appeals held that this indicated that the insurance company had not exercised good faith in the negotiation process.

{¶ 19} Phillabaum's testimony indicates that in assessing liability, the severity of the collision warranted the expenditure of approximately $4,600 to determine whether appellant was partially liable. However, in assessing damages, the severity of the collision was insufficient to indicate that appellant incurred more than $6,000 in medical expenses, and no lost income, regardless of any evidence appellant might produce to the contrary. State Farm authorized $4,600 for the accident reconstruction report to establish comparative negligence of ten to 20 percent savings on a claim it believed involved minimal damages.

{¶ 20} We find that the trial court abused its discretion in finding that appellee acted in good faith and in overruling the motion for prejudgment interest. Accordingly, the assignment of error is sustained.

{¶ 21} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is reversed, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion.

Judgment reversed
and cause remanded.

FARMER and WISE, JJ., concur.