STATE ex rel. BERQUIST, Appellant,

v.

BOARD OF TRUSTEES OF THE OHIO POLICE
AND FIRE PENSION FUND, Appellee.

[Cite as *State ex rel. Berquist v. Bd. of Trustees of the Ohio Police
& Fire Pension Fund,* 174 Ohio App.3d 516, 2008-Ohio-278.]

Court of Appeals of Ohio,
Third District, Van Wert County.

No. 15–07–06.

Decided Jan. 28, 2008.

Delores F. Torriero, for appellant.

John T. Williams, Assistant Attorney General, for appellee.

PRESTON, Judge.

## I. Facts

{¶ 1} Relator-appellant, Gregory C. Berquist, appeals the judgment of the Van Wert County Court of Common Pleas denying his writ of mandamus to compel respondent-appellant, Board of Trustees of the Ohio Police and Fire Pension Fund, to reverse its decision to cancel his disability benefits and to desist its attempts to collect payments made to him since April 1, 2004. For reasons that follow, we affirm.

{¶ 2} Around September 1979, Berquist was hired by the Sidney, Ohio Police Department. On July 27, 1988, Berquist was accidently shot and seriously injured while on duty. In September 1988, Berquist returned to work at the

Sidney Police Department but was ultimately unable to pass a required departmental physical examination.

{¶ 3} On August 30, 1989, Berquist submitted a disability-retirement application to the pension fund. In March 1990, Berquist was awarded a maximum partial disability pursuant to R.C. 742.37(C)(3), which he accepted on April 10, 1990.

{¶ 4} Subsequently, in 1990, Berquist became employed at the Shelby County Sheriff's Office as an agent for a multijurisdictional narcotics task force. In September 1991, Berquist accepted the position of deputy director of administration with the Ohio Attorney General's Office, Bureau of Criminal Identification and Investigation. In November 1995, Berquist transferred to a position as deputy director of the Ohio Department of Rehabilitation and Corrections.

{¶ 5} In May 1997, Berquist accepted a position as director of administrative services with the Allen County Sheriff's Office and was appointed to the position of deputy sheriff with the rank of major. In this position, Berquist was responsible for drafting grants, overseeing the fiscal department, and improving the information systems. During his time at the Allen County Sheriff's Office, Berquist was a commissioned peace officer and a member of the dive team. On January 24, 2003, the Sheriff's Office laid off Berquist, but he was able to remain a commissioned special-deputy officer.

{¶ 6} On April 21, 2003, Berquist was hired as the safety/services director by the city of Delphos, Ohio. As a condition of his employment, Berquist also served as an appointed part-time auxiliary patrol officer. Berquist's primary duty as safety/services director was to administer large construction projects; however, he was also charged with enforcing city laws, ordinances, and resolutions.

{¶ 7} On April 1, 2004, the pension fund distributed to its members newly revised standards for disability terminations found in Ohio Adm.Code 742-3-20. On April 30, 2004, Berquist resigned his commission as an auxiliary patrol officer with the city of Delphos.

{¶ 8} Acting upon information received regarding his work history and law-enforcement duties, the pension fund sent a letter to Berquist on July 28, 2005, indicating its decision to terminate his disability benefits and informing him of his right to appeal. Berquist subsequently appealed.

{¶ 9} On November 29, 2005, the appeal board held a hearing wherein it determined that Berquist was employed as a police officer at the time he was appointed deputy sheriff with the rank of major on May 5, 1997. Furthermore, the appeal board determined that Berquist was employed as a police officer on September 16, 1998, the effective date of the termination provisions now found in R.C. 742.40(C)(3). Pursuant to Ohio Adm.Code 742-3-20(G), the appeals board

notified Berquist that his termination of disability benefits would be effective April 1, 2004, and that therefore, the pension fund would seek benefits paid to him since that date.

{¶ 10} On January 18, 2006, Berquist filed a complaint for a writ of mandamus in the Van Wert County Court of Common Pleas to compel the pension fund to (1) reverse its determination, (2) declare him disabled, (3) reinstate his disability benefits, and (4) desist its attempts to recover benefits paid since April 1, 2004. On March 27, 2007, the trial court overruled Berquist's writ of mandamus and entered its judgment entry denying his request on April 5, 2007.

{¶ 11} On April 26, 2007, Berquist filed an appeal to this court asserting three assignments of error for review.

## II. Standard of Review

{¶ 12} In a mandamus action, the relator must establish that (1) he possesses a clear legal right to the relief sought, (2) the respondent has a clear legal duty to perform the requested act, and (3) he has no plain and adequate remedy at law. *State ex rel. Manson v. Morris* (1993), 66 Ohio St.3d 440, 441, 613 N.E.2d 232, citing *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 451 N.E.2d 225. The facts and proof submitted to establish these criteria must be "plain, clear, and convincing before a court is justified in using the strong arm of the law by way of granting the writ." *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 161, 40 O.O.2d 141, 228 N.E.2d 631.

{¶ 13} When deciding whether the extraordinary writ of mandamus is appropriate, a court may consider the facts and circumstances of the particular case, such as: (1) the applicant's rights, (2) the interests of third persons, (3) the importance or unimportance of the case, (4) the applicant's conduct, (5) the equity and justice of the relator's case, (6) public policy and the public's interest, (7) whether the performance of the act by the respondent would give the relator any effective relief, and (8) whether such an act would be impossible, illegal, or useless. Id. at 162, 40 O.O.2d 141, 228 N.E.2d 631.

{¶ 14} Since granting or denying a writ necessarily requires the lower court to exercise discretion, an appellate court must review its decision under an abuse-of-discretion standard. *Leland v. Lima*, 3d Dist. No. 1–02–59, 2002-Ohio-6188, 2002 WL 31529029, ¶ 10, citing *State ex rel. Ney v. Niehaus* (1987), 33 Ohio St.3d 118, 515 N.E.2d 914; *Truman v. Clay Ctr.*, 160 Ohio App.3d 78, 2005-Ohio-1385, 825 N.E.2d 1182, ¶ 16. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 15} In the context of disability and retirement benefits, "[w]here 'some evidence' is found to support the board's decision, the extraordinary writ of mandamus will not be issued to interfere with or control the board's exercise of discretion." *Kinsey v. Bd. of Trustees* (1990), 49 Ohio St.3d 224, 226–227, 551 N.E.2d 989, citing *State ex rel. Rouch v. Eagle Tool & Machine Co.* (1986), 26 Ohio St.3d 197, 200, 26 OBR 289, 498 N.E.2d 464. The pension fund board abuses its discretion when it acts in an arbitrary, capricious, or unconscionable manner. *State ex rel. Worrell v. Ohio Police & Fire Pension Fund,* 112 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380, ¶ 10. The pension fund board does not abuse its discretion when its determination was supported by some evidence. *Kinsey,* 49 Ohio St.3d at 226, 551 N.E.2d 989. See also *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.,* 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, ¶ 19.

### III.  Analysis
### ASSIGNMENT OF ERROR NO. I

The trial court erred when it determined that some evidence existed to show that Gregory C. Berquist met the definition of police officer as defined in O.A.C. 742–3–20.

{¶ 16} In his first assignment of error, Berquist argues that the trial court erred when it found that some evidence existed to support the pension board's determination that he was a "police officer" as defined in Ohio Adm.Code 742–3–20. Specifically, Berquist alleges that *State ex rel. Wise v. Bd. of Trustees of the Ohio Police & Fire Pension Fund* (Dec. 19, 2003), 1st Dist. No. C–030135[1] required that the trial court look beyond his employment title and examine his actual duties to determine if he was acting as a police officer. The pension fund argues that Berquist's reading of *Wise* is misleading and that *Wise* is distinguishable since it was decided before the pension fund promulgated rules defining "police officer." We agree with the pension fund that *Wise* fails to support Berquist's argument.

{¶ 17} Darla Wise was employed as a police officer with the Cincinnati police department from 1981 to 1998. *Wise,* 1st Dist. No. C–030135, at *2. Subsequently, Wise became disabled and retired with a partial disability award from the pension fund. Id. On September 9, 1998, Wise began employment with the Ohio Department of Taxation as a tax enforcement agent. Id. On July 1, 1999, the tax commissioner formally journalized Wise's appointment as a "Tax Enforcement Agent 1." Id. In May 1999, the pension board learned of Wise's employ-

---

1.  The Ohio Supreme Court denied review in *State ex rel. Wise v. Bd. of Trustees of the Ohio Police & Fire Pension Fund,* 102 Ohio St.3d 1423, 2004-Ohio-2003, 807 N.E.2d 367.

ment as a tax enforcement agent and decided to terminate her disability benefits as of September 16, 1998. Id. at *2–3.

{¶ 18} Wise contested the termination of her disability benefits alleging that her work with the tax commission was "purely investigative in nature." Id. at *3. Wise subsequently filed a complaint in the court of common pleas seeking a writ of mandamus against the pension fund, but the trial court refused to issue the writ, concluding that Wise's job duties were similar to those of a police officer. Id.

{¶ 19} The Court of Appeals for the First District reversed in part and affirmed in part. The appellate court found that there was insufficient evidence in the record to find that Wise was acting as a police officer from September 8, 1998, to July 1, 1999—the time prior to the journalization of Wise's appointment as a tax enforcement agent. Id. at *6. The court found error in the trial court's determination because it did not have any evidence in the record of "police duties" that it could compare with Wise's duties as a tax enforcement agent. Id. Since the trial court lacked a standard for comparison, the appellate court found that its determination was unreasonable. Id. at *7.

{¶ 20} On the other hand, the court affirmed the trial court's determination that Wise did not have a clear right to receive disability benefits following her appointment on July 1, 1999. Furthermore, in reaching its determination, the Court in *Wise* noted that R.C. Chapter 742, at that time, did not define the term "police officer." Id. at *6.

{¶ 21} In this case, the pension fund determined that Berquist was employed as a police officer when he was appointed to the position of deputy sheriff on May 15, 1997, and was therefore employed as a police officer on September 16, 1998, the effective date of the bill that revised the disability statutes and enacted the termination provisions now found in R.C. 742.40(C)(3). The record supports the pension fund's finding that Berquist was appointed to the position of deputy sheriff, rank of major, on May 15, 1997. Unlike the factual situation in *Wise* where the pension board found the hire date as the relevant date for determining whether the relator was acting as a police officer, here the board determined that Berquist's employment as a police officer began on the date he was appointed. 1st Dist. No. C–030135, at *2–3. Consequently, we do not find that the board's determination or the trial court's conclusions of law are contrary to *Wise*; rather, their actions are consistent with the court's decision in *Wise*.

{¶ 22} As the court in *Wise* also noted, the term "police officer" was not then defined in R.C. Chapter 742. Id. at *6. R.C. Chapter 742 was amended, however, to provide the pension fund with the authority to promulgate rules pertaining to

the retention of disability benefits. H.B. 222 (effective 11–2–99). Thus, *Wise* has been superseded by statute and is not dispositive to this case.

{¶ 23} Ohio Adm.Code 742–3–20 now provides:

For purposes of division (C)(3) of section 742.40 of the Revised Code, Ohio police and fire pension fund ("OP&F") shall consider an OP&F member to be "employed as a police officer or firefighter" if one of the following applies:

(A) The person is appointed, commissioned, compensated, designated, employed, engaged, volunteering, or otherwise serving as one of the following:
* * *

(21)A PERS law enforcement officer, as defined in section 145.01 of the Revised Code or a similar job position outside the state of Ohio; * * *

R.C. 145.01(WW) defines "PERS law enforcement officer" as "a sheriff, *deputy sheriff,* township constable or police officer in a township police department or district, drug agent, *municipal public safety director,* * * * *municipal police officer.*" (Emphasis added.)

{¶ 24} Berquist was employed as both a deputy sheriff for Allen County and a municipal public safety director for Delphos. Furthermore, in his capacity as safety/services director for Delphos, Berquist was appointed as a peace officer with the title "Paid Auxiliary Patrolman," which required that he, among other things, "discharge the duties of [a] Police Officer." Accordingly, Berquist fell within the express definition of "police officer" as defined in Ohio Adm.Code 742–3–20.

{¶ 25} Berquist does not dispute that he held these positions; rather, he argues that the fact that he was "employed as a police officer" is not, in itself, dispositive to the case. He alleges that under Ohio Adm.Code 742–3–20(D) he was entitled to ninety (90) days to terminate his conflicting status. We find that this argument lacks merit.

{¶ 26} Ohio Adm.Code 742–3–20(D) provides the following:

For those disability benefit recipients who are considered "employed as a police officer or firefighter" under the prior version of this rule, those recipients shall be automatically subject to the statutory requirement relating to the termination of disability benefits, as set forth in division (C)(3) of section 742.40 of the Revised Code, but for all other positions now covered by this rule, OPF will give ninety days prior written notice of the changes outlined in this rule to those disability benefit recipients who have accepted a disability award from OPF prior to the effective date of this rule and allow those recipients to have ninety days to terminate the status not previously covered under this rule or be

subject to the statutory requirements relating to the termination of disability benefits, as set forth in division (C)(3) of section 742.40 of the Revised Code.

Berquist alleges that he was entitled to the 90–day grace period provided under subsection (D); however, his argument overlooks the fact that if he was already considered a "police officer" under the prior version of the rule, then he would be automatically subject to the termination procedures. A review of the record reveals that Berquist was, in fact, a "police officer" under the *prior* version of the rule, and therefore, not entitled to the 90–day grace period.

{¶ 27} The prior version of Ohio Adm.Code 742–3–20 (effective 6–30–02), defined "police officer" to include "peace officers" as that term is defined in R.C. 109.71. R.C. 109.71(A)(1) defines "peace officers" to include deputy sheriffs. At the time of the rule change in 2002, Berquist was a deputy sheriff in Allen County. Thus, Berquist was employed as a police officer under the prior version of Ohio Adm.Code 742–3–20 and immediately subject to the termination provisions of R.C. 742.40(C)(3) pursuant to current Ohio Adm.Code 742–3–20(D). Accordingly, Berquist's argument that he was entitled to 90 days to terminate his conflicting status is without merit.

{¶ 28} Since the pension board had evidence to conclude that Berquist was acting as a police officer under Ohio Adm.Code 742–3–20, we will not reverse the trial court's determination. *Kinsey,* 49 Ohio St.3d at 226, 551 N.E.2d 989, citing *State ex rel. Rouch,* 26 Ohio St.3d at 200, 26 OBR 289, 498 N.E.2d 464; *State ex rel. Schaengold,* 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, at ¶ 19.

{¶ 29} Berquist's first assignment of error is therefore overruled.

### ASSIGNMENT OF ERROR NO. II

The trial court erred when it failed to apply the equitable doctrine of laches to the facts at bar.

{¶ 30} Berquist, in his second assignment of error, argues that the trial court failed to apply the equitable doctrine of waiver or laches when the evidence presented showed that Berquist's employment was investigated in 2000 and the pension fund failed to act. Berquist also asserts that it is inequitable to terminate his disability benefits because he resigned his peace officer's commission in reliance on a letter from the pension fund.

{¶ 31} The pension fund, on the other hand, argues that laches is not a defense when the government is acting to enforce a public right or protecting a public interest. Furthermore, the pension fund asserts that equitable doctrines are not appropriate because Berquist cannot show prejudice. We agree with the pension fund.

{¶ 32} Generally, "[t]he government cannot be estopped from its duty to protect public welfare because public officials failed to act as expeditiously as possible," and "[l]aches is * * * no defense to a suit by the government to enforce a public right or to protect a public interest." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 146, 555 N.E.2d 630, syllabus. In order to bring a successful claim of laches, the asserting party must show that he has been materially prejudiced by the adverse party's delay. *Smith v. Smith* (1959), 168 Ohio St. 447, 455, 7 O.O.2d 276, 156 N.E.2d 113; *Wright v. Oliver* (1988), 35 Ohio St.3d 10, 11, 517 N.E.2d 883.

{¶ 33} We are not persuaded here to deviate from the general rule that laches is no defense when the government is acting to protect a public interest. *Frantz*, 51 Ohio St.3d at 146, 555 N.E.2d 630. It is clear that the pension fund terminated Berquist's disability benefits since he was acting as a police officer and still collecting benefits. Consequently, the pension fund, as trustee, had a duty to terminate Berquist's disability benefits to protect the interests of other pension-fund contributors. Acting in this quasi governmental capacity, it would be inappropriate to apply the doctrine of laches to the pension fund. Id.

{¶ 34} Furthermore, the record is absent any prejudice to Berquist resulting from the pension fund's delay. *Smith*, 168 Ohio St. at 455, 7 O.O.2d 276, 156 N.E.2d 113; *Oliver*, 35 Ohio St.3d at 11, 517 N.E.2d 883. If anything, Berquist has materially benefitted from the delay since he has been able to collect both his disability benefits and a paycheck as far back as 1990,[2] and the pension fund is seeking only benefits paid after April 2004. We are not persuaded that Berquist has suffered prejudice sufficient to trigger equitable doctrines.

{¶ 35} For these reasons, Berquist's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. III

Appellant Berquist has no other plain and adequate remedy at law.

{¶ 36} In his third assignment of error, Berquist argues that he has no other plain and adequate remedy at law. Although Berquist may be without an adequate remedy at law, issuing a writ of mandamus requires more than this fact alone. *State ex rel. Manson*, 66 Ohio St.3d at 441, 613 N.E.2d 232, citing *McMonagle*, 6 Ohio St.3d at 29, 451 N.E.2d 225. As the trial court found, Berquist has failed to show that he has a clear legal right to his continued receipt

---

2. In fact, the record indicates that Berquist was receiving $2,400 per month in disability benefits while he was employed as the safety/services director for Delphos and earning $58,000 per year.

of disability benefits. The trial court's determination was not an abuse of discretion since the evidence supported the pension fund's decision.

{¶ 37} Berquist's third assignment of error is therefore overruled.

## IV.  Conclusion

{¶ 38} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

WILLAMOWSKI and ROGERS, JJ., concur.